NOT DESIGNATED FOR PUBLICATION

No. 126,308

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

MICHAEL ANTHONY WOOTEN,
*Appellant*.

MEMORANDUM OPINION

Appeal from Johnson District Court; THOMAS KELLY RYAN, judge. Submitted without oral argument. Opinion on remand filed July 17, 2026. Affirmed.

*Ryan J. Eddinger*, of Kansas Appellate Defender Office, for appellant.

*Shawn E. Minihan*, assistant district attorney, *Stephen M. Howe*, district attorney, and *Kris W. Kobach*, attorney general, for appellee.

Before WARNER, C.J., ARNOLD-BURGER and BRUNS, JJ.

PER CURIAM: Kansas law demands jury unanimity as to a defendant's guilt. *State v. Allen*, 290 Kan. 540, 544, 232 P.3d 861 (2010). When a case involves multiple acts, the jury must be unanimous in finding which specific act constitutes the crime. *State v. Ninh*, 320 Kan. 477, 493, 570 P.3d 1169 (2025). To make sure the right to a unanimous verdict is preserved, the court must provide an instruction regarding the jurors' duty to agree on the specific act that constitutes the crime, or the State must elect the specific act upon which the charge relies. See *State v. King*, 297 Kan. 955, 978, 305 P.3d 641 (2013).

1

This case was remanded by the Kansas Supreme Court for us to consider whether a special unanimity instruction was required as it relates to Michael Anthony Wooten's charge of aggravated intimidation of a witness. In *State v. Wooten*, No. 126,308, 2025 WL 2555301, at *9 (Kan. App. 2025) (unpublished opinion) (*Wooten I*), we concluded that Wooten had abandoned his claim regarding the need for a unanimity instruction due to failure to "provide precise citations to the record where the error occurred as required under [Kansas Supreme Court Rule 6.02(a)(4) and (a)(5) (2025 Kan. S. Ct. R. at 36)]." The Supreme Court disagreed and remanded the case for us to fully consider Wooten's jury instruction argument.

Because we find that this was not a situation involving multiple acts, and even if it were the State elected a specific act, we affirm Wooten's conviction.

FACTUAL AND PROCEDURAL HISTORY

We need not restate the facts of the case, except as they relate to the only charge we are to consider on remand, aggravated intimidation of a witness. Suffice it to say that it involves communications from the county jail between Wooten, age 34, and 13-year-old J.A., after Wooten had been charged with aggravated indecent liberties and sexual exploitation of J.A.

ANALYSIS

*The legal framework for examining cases involving multiple acts*

The Kansas Supreme Court has repeatedly held that when a case involves multiple acts, the jury must be unanimous in finding which specific act constitutes the crime. *Ninh*, 320 Kan. at 493. Therefore, if there are multiple acts, the jury must be specifically

2

instructed regarding its duty to agree on the specific act that constitutes the crime or the State must elect the specific act upon which the charge relies. See *King*, 297 Kan. at 978.

Whether a unanimity instruction is required is analyzed through a three-step framework. First, the court determines whether the case involves multiple acts. This requires examining whether jurors were presented with evidence of separate acts, each of which could independently support a conviction for the crime charged. Whether a case is a multiple acts case is a question of law over which this court has unlimited review. 297 Kan. at 980-81.

If the case qualifies as a multiple acts case, the next step is to assess whether an error occurred. To avoid error, the State must either elect which act supports each charge or the court must instruct the jury to agree unanimously on the specific act for each charge. A failure to do so constitutes an error. Finally, if the appellate court finds error, the court evaluates whether the error was reversible or harmless. *State v. Santos-Vega*, 299 Kan. 11, 18, 321 P.3d 1 (2014).

*The position of the parties*

The only conviction at issue here is the one for aggravated intimidation of a witness under K.S.A. 2017 Supp. 21-5909(b). Under that statute, aggravated intimidation of a witness is "attempting to prevent or dissuade . . . [a]ny witness or victim from attending or giving testimony at any civil or criminal trial, proceeding or inquiry authorized by law." K.S.A. 2017 Supp. 21-5909(a)(1). The act is done with the "intent to thwart or interfere in any manner with the orderly administration of justice" committed against a "witness or victim [who] is under 18 years of age." K.S.A. 2017 Supp. 21-5909(a), (b)(4).

Wooten contends the district court erred by not giving a multiple acts instruction on this charge, depriving him of a fair trial. He argues that each of the "six different jail house phone calls [that he] made to JA" could support the alleged aggravated intimidation of a witness. In other words, they "were separate and distinct acts that each could have formed the basis for the charged offense."

The State responds that there were not multiple acts to support the conviction. The State explains that although it admitted six exhibits that contained 126 separate jailhouse phone calls between J.A. and Wooten, only 3 of these calls were published to the jury and just one contained an act of witness intimidation. Wooten urged J.A. to "'[s]tick to [her] guns'" and "'say nothing'" in that particular phone call. The State asserts that the evidence points to a single course of conduct, making a multiple acts instruction unnecessary. We agree with the State.

*This is not a multiple acts case.*

The threshold question is whether we are presented with a multiple acts case requiring a unanimity instruction. If not, Wooten's argument fails.

This requires assessing whether the alleged acts are separate and distinct incidents or part of a single, continuous course of conduct. If the incidents are not legally or factually distinct, they cannot be considered multiple acts. *King,* 297 Kan. at 980.

We receive guidance in this inquiry from *State v. Schoonover*, 281 Kan. 453, 133 P.3d 48 (2006). There the court explained that timing and criminal impulse are important factors to consider in deciding whether incidents are factually separate.

> "Thus, the considerations would include: (1) whether the acts occur at or near the same time; (2) whether the acts occur at the same location; (3) whether there is a causal

4

relationship between the acts, in particular whether there was an intervening event; and (4) whether there is a fresh impulse motivating some of the conduct." 281 Kan. at 507.

*The* Schoonover *factors of unitary conduct support finding a single course of conduct or scheme in this case, not multiple acts.*

1. *Timing of the acts*

The key question is whether the jailhouse phone calls should be viewed as individual acts or as part of a single, continuous scheme. For instance, in *State v. Colston*, 290 Kan. 952, 963, 235 P.3d 1234 (2010), separate acts of sexual penetration on different days were distinct and separate, thus constituting multiple acts requiring a unanimity instruction. Conversely, in *State v. Foster*, 290 Kan. 696, 714, 233 P.3d 265 (2010), the court found no multiple acts because Foster was motivated by a broad and singular impulse to threaten and terrorize his victims, and the many threats were the result of a single impulse to terrorize them.

Here, the State focused the jury's attention on only 3 of the 126 jail house calls that were similar in nature (expressions of love, reminiscing of romantic times together, a discussion of the evidence, and debating suicide if things did not go well) and occurred over a brief three-day period (from October 28 to October 30, 2017). This short time frame supports a finding that these actions were part of a single course of conduct or scheme.

2. *Location*

Here, all jailhouse phone calls occurred under the same circumstances and location, as they were all between Wooten and J.A. Therefore, this factor also supports the conclusion that the actions were part of a single course of conduct or scheme.

3. *Causal connection between the acts and the presence of a new impulse driving some of the behavior*

If the calls are part of a continuous effort to intimidate the witness, they may be treated as a single scheme.

Context is important. "Courts must look to the facts and the theory of the crime as argued to determine whether a jury verdict implicates unanimity issues." *Foster*, 290 Kan. at 713. The context here suggests Wooten's jailhouse phone calls shared a consistent theme of witness intimidation, creating a continuous course of conduct rather than isolated, unrelated actions.

We set out many of those facts in *Wooten I*.

"The State introduced seven exhibits of recorded jail calls between Wooten and J.A.—though only playing three for the jury—supporting the aggravated witness intimidation charge, Count III. Detective Mazzei testified to their content: discussions of sexual activity, Wooten inquiring about pregnancy, Wooten pressing J.A. to keep to her story, Wooten not wanting to go to prison for a long time, and allusions to both of Wooten and J.A. committing suicide with statements like that if things go bad, he would 'check out' and she could do the same thing and come to meet him. And during the State's opening, closing, and rebuttal statements about Count III—aggravated intimidation of a witness—the prosecutor emphasized a specific remark made by Wooten to J.A. during a jailhouse phone call. In that conversation, the prosecutor told the jury that Wooten urged J.A. to '[s]tick to [her] guns [and] don't say nothing.'" *Wooten I*, 2025 WL 2555301, at *2.

To add to this context, J.A. clearly had feelings for Wooten, even though she was only 13 years old when these events occurred. J.A.'s mother had two children by Wooten. So he was the father of her half-siblings. Her mother began a relationship with Wooten when J.A. was three or four years old. Her grandparents noted that due to her lack of parental care, she was particularly vulnerable to people who paid attention to her. She

6

testified that she was looking for someone who would take care of her. Wooten fit that bill. He had been in her life for a long time and would have been aware of her difficult childhood and insecurities. He showered her with attention, albeit inappropriate.

The testimony revealed that when her grandparents found Wooten hiding in her bedroom she begged her grandmother, "[D]on't tell." He escaped out the window and fled the scene. J.A. consistently told authorities, her mother, and her grandparents, that there was nothing inappropriate going on between the two of them. When confronted with a picture of the two of them kissing, she indicated that she was a willing participant. She later admitted to her grandmother that when she and Wooten had been on the run together, they had camped out in sleeping bags and used the creek to wash. According to police testimony, their running came to an abrupt conclusion when police in Cleveland, Missouri, attempted to stop the truck Wooten was driving because the tag was not visible. J.A. was a passenger. When the officer initiated his sirens to stop the truck, Wooten failed to stop. After driving into a field, J.A. was thrown from the truck. She eventually got back in and they continued to flee, with the truck in reverse, back toward the highway. The truck ended up falling into a ravine and flipped upside down. The occupants broke out the passenger window and fled on foot until captured. At the scene, they recovered a laptop and a cell phone. That laptop was later discovered to have multiple incriminating sexual photographs related to Wooten and J.A.

Wooten's control over J.A. was further demonstrated in her testimony. J.A. was a reluctant witness. She indicated that at the outset of her testimony. She was evasive during her time on the witness stand. She testified that although she knew there were photos of her taken by Wooten, she did not know if she was nude in the photos. She remembered being involved in the police chase. And she remembered a laptop being found but she did not know if it belonged to Wooten. This is significant, because during the same phone call in which he told her to "stick to her guns," J.A. advised Wooten that the police had located his laptop. Wooten told J.A. they could not talk about that, and

7

then a short time later, he said he never had a laptop. In the same conversation he talked about killing himself and said he was on suicide watch.

Wooten does not allege any other calls contained requests or suggestions to J.A. from Wooten to tell a particular version of the events. In fact, his position is that *none* of the phone calls were intimidating or dissuaded her from testifying. His sole allegation is that J.A. testified she never felt threatened. He argues that the phone calls each form the basis for the single and separate intimidation charge. Yet he fails to elaborate on how the other calls could have supported the charge, nor does he address the State's argument that it was relying on only one call for the charge.

We find that by highlighting the call in which Wooten advised J.A. to stick to her guns and not say anything, the State streamlined its case, effectively narrowing its focus to this specific act rather than requiring the jury to dissect all the calls as individual offenses. Thus, the last two *Schoonover* factors support the conclusion that the actions were part of a single course of conduct or scheme.

Applying the four *Schoonover* factors of unitary conduct to these facts leads us to conclude that Wooten's jailhouse phone calls to J.A. were part of a single course of conduct or scheme, with the focus on one particular phone call. These were not multiple acts. A unanimity instruction was not required.

*Even if these were multiple acts, the State clearly elected a specific act.*

If the case qualifies as a multiple acts case, the next step is to assess whether an error occurred. To avoid error, the State must either elect which act supports each charge or the court must instruct the jury to agree unanimously on the specific act for each charge. See *King*, 297 Kan. at 978. Here, even if we assume these were multiple acts, a

8

unanimity instruction was not required because the State identified the specific criminal act on which it relies.

The Kansas Supreme Court has treated "a prosecutor's opening statement and closing argument as the functional equivalent of an election by the State." *State v. Moyer*, 306 Kan. 342, 361, 410 P.3d 71 (2017). For instance, in *State v. Dickson*, 275 Kan. 683, 696-97, 69 P.3d 549 (2003), the court found no issue of multiple acts because the State effectively made an election. In both the opening statement and closing argument, the prosecutor informed the jury of the specific incident the State relied on.

Here, the State specifically identified the act supporting the charge. During the State's opening, closing, and rebuttal statements, the prosecutor outlined how Wooten intimidated J.A., highlighting one specific phone call.

In the State's opening statement, the prosecutor first highlighted the act upon which they were relying.

> "You'll also hear him tell [J.A.] to look things up like how to get evidence dismissed, and tell her he hopes [she] sticks to her guns and don't say nothing."

In the State's closing statement, the prosecutor highlighted the same phone call:

> "But he attempted to dissuade. How. Well you heard it in the phone calls yourself. Again, the State would submit to you that his comment when he said, 'Stick to your guns. Don't say nothing.'"

And in rebuttal, the prosecutor reiterated this:

"[W]hat else did he say. 'Stick to your guns. Don't say nothing.' It's up to you to decide. You heard it with your own ears. Is that an attempt to dissuade her. Again, State would argue absolutely."

By consistently referencing this specific statement, the prosecutor effectively elected the act constituting the charge of aggravated witness intimidation.

In conclusion, this is not a multiple-acts case. And even if it were, the State elected a specific act on which it asked the jury to base its decision. Therefore, a unanimity instruction was not required. There was no error.

Affirmed.